| 24 | 277 |
| 138 | 582 |

## YATER and Others *v.* MULLEN.

PRACTICE—REHEARING.—It is too late to present a question for the first time in the Supreme Court, on a petition for a rehearing.

FIXTURES.—A erected a mill upon land owned by B; under a parol contract that if B should pay off a certain judgment which was a lien on the land, and should then convey to A an undivided half of the land, he, B, should become the owner of one-half of the mill. Until the judgment was paid mill was to remain the individual property of A. B failed to pay the judgment, and the land was sold upon an execution issued thereon.

*Held,* that after the sale of the land on the execution, the mill, though standing upon the land, was the personal property of A, who had a perfect right to remove it from the land.

*Held,* also, that A had acquired no interest in the land as a purchaser, and his right to remove the mill did not depend upon the *law* in relation to fixtures erected by him as tenant, but upon the *contract,* by virtue of which he acted.

WITNESS—PARTIES.—Now that parties are permitted to testify in their own behalf, they must be held to the same prompt attendance to give their testimony that the law requires of other witnesses.

TROVER—MEASURE OF DAMAGES.—The measure of damages, in an action for the conversion of personal property, is the value of the property at the time of the conversion.

APPEAL from the *Ripley* Circuit Court.

*On Petition for Rehearing.*

FRAZER, J.—Since the opinion in this case was reported, 23 Ind. 562, other counsel for the appellants present an application for rehearing, and in support of it an elaborate brief, devoted mainly to a question not presented at all on the hearing, and, therefore, not then considered or discussed by us. It is, by the well settled practice of this court, too late to present a question for the first time on a petition for rehearing, and in consenting to consider that question, in the present instance, we do not mean to make an innovation which shall be regarded as a precedent in future cases.

The new question alluded to is, whether, upon the evidence, the plaintiff below was entitled to recover at

all. It is insisted that he was not, because the plaintiff, as to the land, was either a purchaser, or a tenant of the owner, and as such built the mill; that if as purchaser he built it, it would constitute part of the realty, and pass by the sheriff's sale; if as tenant, then the right to remove the mill, as a fixture, would be lost, unless exercised before the termination of the tenancy.

The legal propositions, in the argument thus stated, are not applicable to the facts of this case. The contract under which the mill was built is stated in the reported opinion in the case, 23 Ind. *supra*, and it will be seen thereby that there was an express contract, by virtue of which the mill was the sole property of the builder until the judgment should be paid off by *Alex. J. Mullen*. This was never done by him, in consequence of which he never acquired any interest in the mill; and no sale of the mill, by virtue of an execution against him, (which, however, the evidence showed was not even attempted,) could give the purchaser any title to it whatever. After the sale of the land, by the sheriff, to satisfy the judgment, the mill, though still standing upon the land, was *Bernard F. Mullen's* personal property, and he had as perfect a right to remove it afterward, as he would have had to remove his horses and wagons, if they had then been upon the land. By the contract, he had no right to remove the mill until after the sheriff's sale. *A. J. Mullen* could have paid off the judgment on the last moment before the land was struck off by the sheriff, and thus entitled himself to ownership in the mill. *Then*, for the first time, it would have been part of the realty. This was the contract, but it was at the option of *A. J. Mullen* to perform this condition, or not. Until he did, *B. F. Mullen* had no interest in the land as purchaser, and his right to remove the mill did not depend at all upon the *law* in relation to fixtures erected by him as tenant, but upon the contract by virtue of which he had acted, and, necessarily incident to which, he had, under the facts of the case, the right to remove it after the sale.

As the argument in support of the petition for a rehearing calls upon us to re-examine our decision as to the ruling of the court below, refusing a new trial, we avail ourselves of the occasion to say something more upon that question.

One of the appellants was at *Indianapolis when the trial began*, and, but for a railroad accident, he would have arrived at court in time to testify, but the accident prevented it. Whether his business at *Indianapolis* was urgent, or not, is not stated, and the law requires us to indulge such presumptions of fact as will sustain the ruling of the court below. He would have testified that the property had not been demanded of him, and that its value was only $800. The evidence controverting the demand we cannot say would probably have changed the result, as there was other evidence tending to show a conversion of the property, that the defendants had taken possession of it, operated it, and claimed it as their own. His evidence as to the value of the property would have been cumulative only.

Public or social obligations, or the demands of private business even, might appear to be, if stated, so urgent and imperative as to justify a witness in being absent at the commencement of a trial which he is subpœnaed to attend. But without such excuse, the witness' duty is to be present before the trial begins, and if he fails he is in contempt, and it is not sufficient that he has intended and arranged to be present in time to testify. To so hold, would be to put every suitor's cause in peril, or drive him to seek delay, for he could not know that he could safely go to trial. Now that parties can be witnesses, there is no rule, consistent with that speedy administration of justice which the constitution requires, short of holding such parties, at their peril, to the same prompt attendance to give their evidence which the law has, time out of mind, required of other witnesses. And upon their application to be relieved from the consequences of their absence, it is surely not a harsh requirement that they shall show to the

court the facts which rendered it necessary for them to be absent when the trial began.

'The zeal and earnestness with which this application is pressed affords strong assurance that the appellants, as well as their counsel, are fully impressed with the belief that the judgment below does them injustice. We are compelled to look only to the record as it is presented to us, and apply to it the settled rules of the law. We have done this with as much care as could be asked, and the result is, that, in our opinion, the petition ought to be overruled.

There is, however, we find to our surprise, a *dictum* in the opinion formerly pronounced, which we hasten to correct. The basis of the measure of damages, in such a case, is the value of the property at the time of conversion, and not, as stated, at the commencement of the suit.

*M. M. Ray, J. W. Gordon, A. G. Porter* and *W. P. Fishback*, for appellants.

*S. Major*, for appellee.