[No. 5282.   Decided April 3, 1905.]

T. Lynn *et al.*, *Respondents*, v. C. W. Waldron, *Appellant*.[1]

Landlord and Tenant—Fixtures—Action to Enjoin Removal of Buildings — Defenses — Equity — Evidence — Intention of Parties. In an action to enjoin a lessee from removing buildings, brought by purchasers of the real estate whose deed expressly excepted the buildings from the grant, the lessee should be permitted to question the plaintiffs as to a bill of sale of the buildings secured by the plaintiffs long after buying the property, and to show the understanding with reference to the buildings at the time the property was purchased; since some latitude must be allowed defendant to show whether the plaintiffs come into equity with clean hands, and since the question whether the buildings were to be regarded as fixtures depends upon the intention of the parties.

Same—Lease With Right to Remove Buildings—Extension of Lease—New Agreement. Where a lessee had the right under a written lease to remove the buildings, and at the expiration of the lease he continued for a time to hold over from month to month under the same terms and with the same rights as to removal, his right to remove the buildings is not abrogated by a further written extension for eighteen months imposing no

[1]Reported in 80 Pac. 292.

new terms, since such an extension is not a new lease abrogating the conditions of the original lease, within the rule of *Spencer v. Commercial Co.*, 30 Wash. 520.

Appeal from a judgment of the superior court for Whatcom county, Neterer, J., entered March 15, 1904, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to restrain the removal of buildings from leased premises. Reversed.

*Crites & Romaine,* for appellant.

*Fairchild & Bruce,* for respondents.

DUNBAR, J.—This is an action brought by respondents to restrain the appellant from removing two certain frame buildings from lot 5, block 31, in Fairhaven, the allegation being that appellant was about to tear the same down and remove them from said lot outright. The ownership of the land in respondents is admitted, but appellant claims to be the owner of the buildings, and was in possession of the same under a verbal lease at the time the action was commenced, and under said verbal lease had a right to remove the buildings. On the 21st day of February, 1895, one P. J. Hennelly was the owner of the lot, and appellant was the owner of the buildings in controversy. They entered into the contract set out in the answer and admitted by reply. Under the terms of that contract the appellant had a right to remove the buildings. In January, 1900, just prior to the expiration of the above contract, the Whatcom Brewing & Malting Company became the owner of the lot, subject to the rights of the appellant under his contract. On February 5, 1902, the lot was purchased by respondents. A copy of the deed is set out in the answer, which is admitted by respondents, and the deed expressly excepts and reserves the buildings from the grant. After the time for the lease

had expired, and while the appellant was still occupying the premises under the terms of the former lease, but as a lessor from month to month, a letter was sent to appellant by the Whatcom Brewing & Malting Company, which letter was in words and figures as follows:

"To C. W. Waldron, Fairhaven.

"In consideration of your repairing up the building occupied by Mr. Gran in Fairhaven, we agree to allow you to occupy that portion of lot five (5) in block thirty-one (31) of Fairhaven, for a long time past occupied by you, for eighteen months from September 1st, 1901, at the monthly rental of twenty-five dollars per month, the same to be paid monthly in advance."

Subsequently to this, the respondents purchased the lots, the deed being as we have indicated above. Under the terms of the above letter, the defendant's lease would expire on March 1, 1903, and during the month of February the defendant prepared to move the buildings, and the complaint in this action was sworn to on the 27th day of February, 1903, just before the expiration of the time. Upon the trial of the cause, judgment was rendered in favor of the plaintiffs in the action, respondents here, and the appellant was enjoined from removing the buildings.

Certain testimony was sought to be introduced by the appellant, and the objections to its introduction were sustained by the court. The testimony is indicated by the following questions:

"What did you pay for the building that was conveyed? Do you know why it was that you desired to get this bill of sale for the building? You purchased the land on which this building was situated how long before the 20th day of February, 1903, if you remember? Do you know, Mr. Lane, why this building was not purchased by you at the time you purchased the land? What understanding, if any, did you have with the Whatcom Brewing and Malt-

ing Company as to these buildings, as to your tenancy, at the time of their purchase of the real property?"

It might be stated here, in explanation, that the bill of sale, referred to in the questions, was a bill of sale from the brewing company to the respondents, made a long time after the land had been sold by the brewing company to the respondents. We think a recurrence to the fundamental principles of equity will disclose that the court erred in sustaining objections to the testimony offered, and especially to the last question above stated, and in determining the rights of the appellant solely by the terms of the written notice served upon him by the brewing company. Equity, according to Blackstone, is the correction of that wherein the law, by reason of its universality, is deficient. In equitable actions the rigid rules of law are relaxed, thereby giving the conscience of the chancellor more latitude. The plaintiffs are asking for relief in an equitable action, which they could not obtain under the more inflexible rules governing an action at law. The same latitude must be granted to the defendant, so that the judge can determine whether or not the plaintiff comes before him with clean hands, a prerequisite to his obtaining the relief prayed for.

The testimony offered was material for another reason. This court held, in *German Sav. etc. Soc. v. Weber,* 16 Wash. 95, 47 Pac. 224, 38 L. R. A. 267, in harmony with almost universal decisions, that the question whether fixtures attached to the real estate should be regarded as personalty or realty was largely governed by the intention of the contracting parties; and the understanding that the parties now claiming these houses had with the party of whom they bought the lots, and who was presumably acting within the scope of his authority in disposing of the lots, certainly tends to throw some light on the inten-

tion and understanding of the respondents in the transaction.

The respondents rely solely upon the case of *Spencer v. Commercial Co.*, 30 Wash. 520, 71 Pac. 53, asserting that the notice given by the brewing company, to the effect that it would continue the lease for eighteen months, was a new lease and did away with the provisions under the former lease under which it is undisputed that the appellant had the right to remove these buildings. But we think these cases can be readily distinguished in principle. It is true that it was decided by this court, in that case, that, where a tenant enters into a new lease, making no mention of a former lease or tenancy, and with no reservation for removal of fixtures placed under the former lease, his right to remove fixtures is thereby precluded. But in that case, which was decided by a majority of the court on what they deemed was the weight of authority, the second lease was in writing, was a complete lease within itself, and would naturally indicate that all the prior agreements of the parties had been merged in the lease. But it is especially stated in that opinion that this rule does not apply when the tenant merely holds over without a new demise under permission from the landlord, or in such a way as to raise an implication of an extension of the original lease, and this case, it seems to us, falls squarely within this announcement. All the conditions of the lease were the same. There had been an original written lease, under the provisions of which the defendant was allowed to remove the buildings, and the lease was conditioned upon the payment of $25 per month. Upon the expiration of this lease, the defendant held over from month to month, with the same understanding and under the same conditions, and this is not controverted by the respondents. This condition existed for several months, and was, in reality, a

lease from month to month, with the undisputed understanding that the appellant had a right to remove the buildings. But it is claimed that this right was destroyed by reason of the notice that the lease might be continued for eighteen months, and that that in effect became a new lease and brought the action within *Spencer v. Commercial Company, supra.* But all the effect that that notice had was simply to make a certain and definite time where the time before was indefinite, or to insure the appellant a right to the possession of the lots under the same conditions for eighteen months, instead of for one month, as under the contract before the notice was given. There were no new terms imposed, and there was nothing whatever, in the barren announcement that the appellant would be allowed to occupy the buildings for eighteen months, to indicate that it was the intention of the lessors that any of the conditions of the original lease should be modified or changed. We think it would be inequitable to enjoin the appellant from removing property which, without any question, was his individual property, and to allow the respondents to appropriate the same.

The judgment will be reversed, and the cause dismissed.

MOUNT, C. J., FULLERTON, and HADLEY, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.